## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **BARRY B. MARTIN,** | : | |
| **Petitioner** | : | |
| | : | |
| **v.** | : | **Civil Action No. 08-181 (JR)** |
| | : | |
| **UNITED STATES OF AMERICA, <u>et al.</u>,** | : | |
| **Respondents** | : | |

### FEDERAL RESPONDENTS' OPPOSITION TO PETITIONER'S
### <u>PETITION FOR A WRIT OF HABEAS CORPUS</u>

The federal respondents, by and through their attorney, the United States Attorney for the District of Columbia, respectfully file their motion to dismiss the petitioner's <u>pro se</u> petition for a writ of habeas corpus.

### INTRODUCTION

Petitioner, Barry M. Martin, claims that both the United States Parole Commission (Commission) and the Court Supervision and Offender Supervision Agency of the District of Columbia (CSOSA), lack the authority to order his commitment to the Re-Entry and Sanctions Center (RSC) or any other drug treatment program as a special condition of his parole.  Petitioner also claims that requiring him to reside in the RSC constitutes double jeopardy, as he had already been sanctioned for his parole violations.

Because drug treatment is a reasonable requirement, and because required residence in the RSC does not constitute "double jeopardy," this Court should summarily deny defendant's petition.

## PROCEDURAL BACKGROUND

On December 20, 1985, petitioner, Barry B. Martin, was sentenced by the District of Columbia Superior Court in Criminal Case No. F-4577-84 to a 36-year term of imprisonment for rape, burglary and robbery.  See Exhibit 1, Sentence Monitoring Computation Data.

On April 14, 2006, petitioner was paroled from this sentence to remain under supervision until November 6, 2029.  See Exhibit 2, Certificate of Parole.

On July 10, 2007, the United States Parole Commission issued a warrant charging petitioner with violating the conditions of his parole by (1) using illegal drugs on several occasions, (2) failing to submit to drug testing, (3) violating the special drug aftercare condition (being terminated from drug treatment program for violating rules of the program), (4) refusing to comply with a special condition that he wear a GPS tracking bracelet, and (5) communicating threats to kill.  See Exhibit 3, Warrant Application.

On July 20, 2007, a probable cause hearing was conducted, and on September 12, 2007, petitioner received a local revocation hearing.  See Exhibit 4, Hearing Summary.  The hearing examiner found that petitioner had violated the special condition that he wear a GPS device, by refusing on several occasions to permit the device to be placed on him.[1]  The hearing examiner recommended that petitioner's parole be revoked, and that he be re-paroled after service of six (6) months on January 9, 2008.  The Commission adopted this recommendation, and petitioner was so informed by notice of action dated October 18, 2007.  See Exhibit 5, Notice of Action.

---

[1]    Petitioner admitted having used illegal drugs in 2006, but the hearing examiner recommended no finding on the charge because petitioner had participated in the Blair House Residential Treatment Program.  The violation charge also had included one new positive drug test, for opiates, on March 23, 2007, but the hearing examiner found that this resulted from a medication petitioner had been given while hospitalized (Levaquin), and did not represent a violation of the conditions of parole.  The hearing examiner similarly made no finding on the other charges, except the GPS charge.

On January 9, 2008, the Commission added a special condition that petitioner reside in the Re-Entry and Sanction Center (RSC) when paroled.  See Exhibit 6, Notice of Action.  The Commission stated the following reason for imposing this condition:

> The Commission has determined, based upon a request from the Supervising Officer that the Reentry and Sanction Center placement be added as a special condition because the condition would allow the subject to be assessed and address a history of substance abuse.

Id.  Petitioner was paroled January 9, 2008, to remain under supervision until February 1, 2031.  See Exhibit 7, Certificate of Parole.[2]

On February 12, 2008, defendant was released from the RSC.  See Exhibit 9.

### ARGUMENT

Petitioner alleges that neither the Commission nor CSOSA have the authority to order his commitment to the RSC as a special condition of his parole.  Petitioner also claims that requiring him to reside in the RSC constitutes double jeopardy, as he had already been sanctioned for his parole violations.

Because the requirements imposed are reasonable requirement, and because required residence in the RSC does not constitute "double jeopardy," this Court should summarily deny defendant's petition.

The Commission has the authority to impose parole conditions on defendant.  The District of Columbia parole statute provides that D.C. Code offenders may be released on parole "upon such terms and conditions as the Board shall from time to time prescribe."  D.C. Code §24-404(a).  The statute granting paroling jurisdiction to the United States  Parole Commission provides that "[t]he

---

[2]    The Pre-hearing Assessment (a document prepared in preparation for petitioner's revocation hearing) details his prior parole revocations, showing his history of substance abuse. See Exhibit 8, pp. 1-2.

Parole Commission shall exercise the authority vested in it by this section pursuant to the parole laws and regulations of the District of Columbia, D.C. Code §24-131(c), and grants the Commission "exclusive authority to amend or supplement any regulation interpreting or implementing the parole laws of the District of Columbia." D.C. Code §24-131(a).

The Commission has implemented regulations governing the imposition of conditions of parole for D.C. Code offenders, which provide as follows:

> The Commission may impose a condition other than one of the general conditions of release if the Commission determines that such condition is necessary to protect the public from further crimes by the releasee and provide adequate supervision of the releasee. Examples of special conditions of release that the Commission frequently imposes are found at §2.204(b)(2).

See 28 C.F.R. §2.85(b). Two frequently-imposed special conditions are:

> (1)     That the releasee reside in or participate in the program of a community corrections center, or both, for all or part of the period of supervision;
>
> (2)     That the releasee participate in a drug- or alcohol-treatment program, and abstain from all use of alcohol or other intoxicants.

See 28 C.F.R. §2.204(b)(2). The RSC is described as follows:

> The Court Services and Offender Supervision Agency (CSOSA) opened a Reentry and Sanctions Center (RSC) in February 2006, providing the city with an important and effective tool in crime control. The center provides clinical substance abuse assessment and treatment readiness services for men and women on pretrial release, probation, parole, or supervised release.
>
> The Reentry and Sanctions Center is housed in Karrick Hall, a former doctors' dormitory on the grounds of DC General Hospital. The 102-bed center is designed to address the relationship between substance abuse and crime. Defendants and offenders who have repeatedly abused drugs will reside in a controlled setting and complete a 30-day program to develop long-term treatment plans before moving on to a continuum of treatment interventions, which will often include inpatient, transitional, and outpatient services.

-4-

See Exhibit 10, "The Reentry and Sanctions Center: An Opportunity for Enhanced Crime Control

in Washington, D.C.

In petitioner's case, the Commission determined that petitioner has a history of substance

abuse and would benefit from residence in the RSC following his release on parole.   The

Commission's regulation at 28 C.F.R. § 2.85(b) provides that the Commission may impose a special

condition of parole if it determines that the condition is "necessary to protect the public from further

crimes by the releasee and to provide adequate supervision of the releasee."  The determination of

what are reasonable conditions is committed to the Commission's discretion by law, and may not

be reviewed as long as there is "some evidence" to support the Commission's findings.  See Kramer

v. Jenkins, 803 F.2d 896, 901 (7th Cir. 1986) (court's review is limited to whether there is "some

evidence" in support of the Commission's decision);  Solomon v. Elsea, 676 F.2d 282, 290-91 (7th

Cir. 1982) (court need only determine whether there is a rational basis in the record for the

Commission's conclusions); Barnard v. Poteat, 271 F. Supp.2d 49, 51 (D.D.C. 2002)(same).

Accordingly, the Commission's decisions and actions must stand unless they are contrary to law or

there exists no rational basis for them.  See e.g. Gambino v. E.W. Morris, 134 F.3d 156, 160 (3rd Cir.

1998) ("the inquiry is only whether there is a rational basis in the record for the [Commission's]

conclusions"); Walrath v. Getty, 71 F.3d 679, 683 (7th Cir. 1995) (same); Bialkin v. Baer, 719 F.2d

590, 593 (2nd Cir. 1983) (same); Stanton v. U.S. Parole Comm'n., 2007 WL 1847993, *3 (D.D.C.

June 27, 2007) (judicial review limited to determining if there has been an "abuse of discretion" and

whether there is "rational basis" to support Commission's decision); Maynard v. U.S. Parole

Comm'n., 2006 WL 389753, *3 (D.D.C. Feb. 17, 2006) (no violation of due process when parole

decision has a rational basis and was adequately supported by the record).  Thus, the Commission's

-5-

determination is not arbitrary or capricious because petitioner (1) admitted to having illegally used cocaine multiple times during parole supervision, (2) admitted to failing to comply with drug-testing requirements during parole supervision, (3) admitted to having been terminated from a drug treatment program for non-compliance during parole supervision, and (4) admitted to having refused to comply with GPS monitoring that would permit his CSO to monitor his whereabouts while on parole.  <u>See</u> Exhibit 4, Hearing Summary.

Accordingly, there is a rational basis in the record for the Commission's determination that additional assessment and treatment for petitioner is warranted.  <u>See</u> <u>Allston v. Gaines</u>, 158 F. Supp. 2d 76, 79 (D.D.C. 2001)(standard of review of Parole Commission decision to revoke parole is abuse of discretion, meaning whether there is a "rational basis in the record" to support the Commission's conclusions).  The conditions of parole serve the dual purpose of prohibiting behavior that is dangerous to the restoration of the individual into normal society and providing the parole officer with information about the parolee and with an opportunity to advise him.  <u>Morrissey v. Brewer</u>, 408 U.S. 471, 479 (1972).  When a prisoner is released on parole, the Commission "has a substantial interest in ensuring that its rehabilitative goal is not frustrated and that the public is protected from further criminal acts by the parolee."  <u>Birzon v. King</u>, 469 F.2d 1241, 1243 (2nd Cir. 1972).  Thus, the Commission may impose restrictions on the rights of parolees that are "reasonably and necessarily related to the interest that the [Parole Commission] retains after his conditional release."  <u>Id</u>.  <u>See</u> <u>also</u> <u>Porth v. Templer</u>, 453 F.2d 330, 333 (10th Cir. 1971).

Petitioner's double jeopardy claim is also meritless. The Double Jeopardy Clause of the Fifth Amendment protects a defendant in a criminal proceeding against multiple punishments or repeated prosecutions for the same offense. Ohio v. Johnson, 467 U.S. 493, 498 (1984). It is well settled that the double jeopardy clause applies only to criminal prosecutions and does not apply to parole decision-making, which comes after the end of a criminal prosecution and sentencing. See Dunn v. California Dep't of Corrections, 401 F.2d 340, 342 (9th Cir. 1968) ("Double jeopardy is not applicable to parole revocation proceedings.); Cortinas v. U.S. Parole Commission, 938 F.2d 43, 46 (5th Cir. 1991)(same); Garcia v. United States, 769 F.2d 697, 700 (11th Cir. 1985)(same); Thompson v. Reivitz, 746 F.2d 397, 399 (7th Cir. 1984), cert. denied, 471 U.S. 1103 (1985)(same); Simpson v. Gunnell, 567 F. Supp. 20, 26 (D. Conn. 1982)(same). A new sentence is not imposed when parole is revoked – the Commission simply decides what portion of an already-imposed sentence should be served in prison. Parole revocation is also not additional punishment because it is remedial rather than punitive. See United States ex rel. Carrasquillo v. Thomas, 527 F.Supp. 1105, 1109 (S.D.N.Y. 1981), aff'd 677 F.2d 225 (2nd Cir. 1982), where the district court stated:

> In the light of the basic differences between the nature and purpose of a criminal prosecution and a parole revocation proceeding, the fact that the indictment was dismissed with prejudice, thus barring reindictment on the same charge, does not bar a parole revocation proceeding that rests upon the same allegations of the untried indictment. Indeed, even had the indictment not been dismissed but had petitioner been tried and found not guilty, it would not have barred a parole revocation based on the same charges of which he had been acquitted.
>
>          *      *      *
>
> As already noted, the essential purpose of a parole revocation proceeding is remedial rather than punitive. In light of the differences between the two proceedings, revocation of parole is not interdicted under the double jeopardy provision of the Fifth Amendment. . . .

See id. at 1109-10.  Accordingly, the Commission did not violate the Double Jeopardy Clause by requiring petitioner's parole release through the RSC, as neither the revocation of parole nor the conditions placed upon re-parole implicate the Double Jeopardy Clause.

## CONCLUSION

For the foregoing reasons, petitioner's petition for a writ of habeas corpus should be summarily denied.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

JOHN P. MANNARINO
Chief, Special Proceedings Division


_____/s/_____
T. ANTHONY QUINN
D.C. Bar No. 415-213
Assistant United States Attorney
555 Fourth Street, NW
Special Proceedings Division, Room 10-909
Washington, D.C.  20530
(202) 514-6807

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of the foregoing to be served by U.S. Mail on petitioner, BARRY B. MARTIN, c/o Carolyn Payne, 2118 13TH Street, SE, Washington, D.C. 20020, on this 10th day of April, 2008.

_____/s/_____
Assistant United States Attorney

```
5H     PAR1L  540*23 *           SENTENCE MONITORING        *     01-08-2008
PAGE 001        *               COMPUTATION DATA            *     09:34:11
                                 AS OF 01-08-2008

REGNO..: 08604-000 NAME: MARTIN, BARRY B


FBI NO..........: 38142DA6            DATE OF BIRTH: 10-14-1960
ARS1............: CUM/A-DES
UNIT............: UNIT C              QUARTERS.....: C01-103U
DETAINERS.......: NO                  NOTIFICATIONS: NO

PRE-RELEASE PREPARATION DATE: 12-23-2007

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  01-09-2008 VIA PAROLE

--------------------CURRENT JUDGMENT/WARRANT NO: 030 ---------------------

COURT OF JURISDICTION..........: DIST OF COLUMBIA, SUPERIOR CRT
DOCKET NUMBER..................: F-4577-84CEFH
JUDGE..........................: HAMILTON
DATE SENTENCED/PROBATION IMPOSED: 12-20-1985
DATE WARRANT ISSUED............: 07-10-2007
DATE WARRANT EXECUTED..........: 07-11-2007
DATE COMMITTED.................: 11-16-2007
HOW COMMITTED..................: RETURN OF PAROLE VIOLATOR
PROBATION IMPOSED..............: NO
SPECIAL PAROLE TERM............:


RESTITUTION...:  PROPERTY: NO  SERVICES: NO       AMOUNT: $00.00

--------------------CURRENT OBLIGATION NO: 010 ---------------------
OFFENSE CODE....:  654
OFF/CHG: 22-2801 RAPE (2 CTS.), 22-1801(A) BURGLARY I,
         22-2901 ROBBERY

 SENTENCE PROCEDURE.............: DC CODE ADULT
 SENTENCE IMPOSED/TIME TO SERVE.:   36 YEARS
 NEW SENTENCE IMPOSED...........: 8607 DAYS
 BASIS FOR CHANGE...............: PAROLE VIOLATOR WARRANT EXEC
 DATE OF OFFENSE................: 07-04-1984




G0002      MORE PAGES TO FOLLOW . . .
```

**EXHIBIT**

```
5H    PAR1L  540*23 *        SENTENCE MONITORING        *    01-08-2008
PAGE 002        *            COMPUTATION DATA         *     09:34:11
                             AS OF 01-08-2008


REGNO..: 08604-000 NAME: MARTIN, BARRY B


------------------------CURRENT COMPUTATION NO: 030 ------------------------

COMPUTATION 030 WAS LAST UPDATED ON 10-24-2007 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 10-26-2007 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 030: 030 010


DATE COMPUTATION BEGAN..........: 07-11-2007
TOTAL TERM IN EFFECT............: 8607 DAYS
TOTAL TERM IN EFFECT CONVERTED..:    23 YEARS      6 MONTHS      22 DAYS
EARLIEST DATE OF OFFENSE........: 07-04-1984


TOTAL JAIL CREDIT TIME..........: 0
TOTAL INOPERATIVE TIME..........: 0
STATUTORY GOOD TIME RATE........: 10
TOTAL SGT POSSIBLE..............: 2827
PAROLE ELIGIBILITY..............: COMMISSION'S DISCRETION
STATUTORY RELEASE DATE..........: 05-07-2023
TWO THIRDS DATE.................: N/A
180 DAY DATE....................: 08-05-2030
EXPIRATION FULL TERM DATE.......: 02-01-2031


PAROLE EFFECTIVE................: 01-09-2008
PAROLE EFF VERIFICATION DATE....: 10-18-2007
NEXT PAROLE HEARING DATE........: UNKNOWN
TYPE OF HEARING.................: UNKNOWN


PROJECTED SATISFACTION DATE.....: 01-09-2008
PROJECTED SATISFACTION METHOD...: PAROLE

REMARKS.......: RELEASE AUDIT COMPLETED BY DSCC.




G0002       MORE PAGES TO FOLLOW . . .
```

**U.S. Department of Justice**
**United States Parole Commission**

**CERTIFICATE OF PAROLE**
**District of Columbia Offender**

Having determined that (1) **Martin, Barry**, Register No. **08604-000**, (DCDC No. **213-260**) (the "inmate") is eligible for parole; (2) there is a reasonable probability that the inmate will live and remain at liberty without violating the law; and (3) the inmate's release is not incompatible with the welfare of society, the United States Parole Commission (the "Commission") ORDERS that the inmate be paroled on **April 14, 2006** and remain under parole supervision through **November 6, 2029**. The conditions listed in this certificate apply during the inmate's parole supervision.

Given under the hand and the seal of the Commission on April 13, 2006.

UNITED STATES PAROLE COMMISSION

*J. C. Bradford*

By:  J.C. Bradford, Correspondence Specialist

Docket/Case Number:  F-4577-84CEEH
Initial Risk Category:  SFS - 7

**Acknowledgement of Release Conditions**
I have read, or had read to me, the conditions that are listed on this CERTIFICATE OF PAROLE. I have received a copy of this CERTIFICATE OF PAROLE. I fully understand the conditions that have been imposed upon me and know that if I violate any of those conditions I may be sent back to prison.

**Consent to the Disclosure of Drug/Alcohol Treatment Information**
By signing this CERTIFICATE OF PAROLE, I consent to unrestricted communication between any facility administering a drug or alcohol treatment program in which I am or will be participating, on the one hand, and the Commission and the office responsible for supervising me, on the other hand. I consent to disclosure by such facility to the Commission and the office responsible for supervising me of any information requested related to my supervision, and the disclosure by the Commission and the office supervising me to any agency that requires such information for the performance of an official duty. This consent is irrevocable until the end of parole supervision.

_____                    _____
                    Name                                                                        DCDC No.

Witnessed: _____
                    Name and Title                                                        Date

The above-named inmate was released on the _____ day of _____, 20____ with a total of _____ days remaining to be served.

_____
Official Certifying Release

Queued: 04-13-2006 10:06:32 BOP-D.C. CCM |

**EXHIBIT** 2

This CERTIFICATE OF PAROLE becomes effective on the day of release set forth above, after you sign this certificate. If you fail to comply with any of the conditions, you may be summoned to a hearing, or retaken on a warrant and reimprisoned pending a hearing, to determine if your parole should be revoked.

## GENERAL CONDITIONS

1. A. You must go directly to Washington, D.C. and appear in person at the Intake Office of the Court Services and Offender Supervision Agency for the District of Columbia (CSOSA), 300 Indiana Avenue, N.W., Washington, D.C. 20001. If you are unable to appear in person at that office within three days of release, you must appear in person at the United States Probation Office nearest to you and follow the instructions of the duty officer.

   B. If you are not released to the community after your parole, you must follow the instructions in 1.A. above when you are released to the community.

2. You must not leave the Washington, D.C. metropolitan area without the written permission of the officer supervising you. The Washington, D.C. metropolitan area consists of the District of Columbia, Prince Georges and Montgomery Counties in Maryland, Arlington and Fairfax Counties in Virginia, and the Cities of Alexandria, Fairfax, and Falls Church in Virginia. For the purpose of applying all conditions of release, "the officer supervising you" includes any supervision officer assisting, substituting for, or acting on behalf of the officer assigned to your supervision.

3. You must, between the first and third day of each month, make a written report to the officer supervising you. In addition, you must meet with the officer supervising you at such times and in such a manner as that officer directs, and provide such information as that officer requests. All information that you provide to the officer supervising you must be complete and truthful.

4. You must notify the officer supervising you within two days of (A) an arrest or questioning by a law-enforcement officer, (B) a change in your residence, or (C) a change in your employment.

5. You must permit the officer supervising you to visit your place of residence and your place of business or employment.

6. You must permit the officer supervising you to confiscate any material that officer believes may be contraband and that is in plain view in your possession, including in your residence, place of business or employment, and vehicle.

7. You must submit to a drug or alcohol test whenever ordered to do so by the officer supervising you.

8. You must not violate any law and must not associate with someone else who is violating any law.

9. You must not possess a dangerous weapon, which includes ammunition.

10. You must not drink alcohol to excess and must not illegally use or possess a controlled substance. You must not frequent a place where you know a controlled substance is illegally used or distributed.

11. You must not associate with a person who has a criminal record without permission from the officer supervising you.

12. You must not enter into an agreement to act as an informant or undercover agent for a law-enforcement agency without permission from the Commission.

13. You must make a diligent effort to work regularly, unless excused by the officer supervising you, and to support any legal dependent.

14. You must make a diligent effort to satisfy any fine, restitution order, court costs or assessment, or child-support or alimony payment to which you are subject. You must provide financial information relevant to the payment of such a financial obligation that is requested by the officer supervising you. If you are unable to pay such a financial obligation in one sum, you must cooperate with the officer supervising you to establish an installment-payment schedule.

15. If you are being paroled from a sentence imposed following conviction of a domestic-violence crime, and that conviction is your first conviction for such a crime, you must, as directed by the officer supervising you, attend an approved offender-rehabilitation program if such a program is readily available within a 50-mile radius of your residence.

16. If you are required by law to report and register as a sex-offender, you must comply with that law.

17. You must provide a DNA sample if the officer supervising you determines that collection of such sample is required by law.

18. You must participate in an Employment Readiness Program if so directed by the officer supervising you.

19. If you are being supervised by CSOSA, you must submit to the sanctions imposed by the officer supervising you within the limits established by an approved schedule of graduated sanctions.

20. If so directed by the officer supervising you, you must notify a person of your criminal history or characteristics to inform that person of a risk of harm.

Queued: 04-13-2006 10:06:32 BOP-D.C. CCM |

**SPECIAL CONDITIONS**

In addition, you shall be subject to the Special Drug and Alcohol Aftercare Conditions that requires that you participate as instructed by your Supervision Officer in a program (inpatient or outpatient) approved by the D.C. Court Services and Offender Supervision Agency for the treatment of narcotic addiction or drug and alcohol dependency. That program may include testing and examination to determine if you have reverted to the use of drugs or alcohol. You shall also abstain from the use of alcohol and all other intoxicants during and after the course of treatment.

In addition, you shall participate in and complete anger management counseling as directed by your Supervision Officer.

In addition, you shall be subject to the Special Sex Offender Aftercare Condition. You shall participate in an in-patient or out-patient mental health program as directed by your Supervision Officer, with special emphasis on long-term sex offender testing and treatment. You are expected to acknowledge your need for treatment and to participate in good faith in achieving the program goals that will be established for you.

In addition, you shall not have any association or contact of any kind with minor children, whether in your residence, employment, social, or other activities, without the approval of your Supervision Officer.

In addition, you shall be subject to the Global Positioning Systems monitoring inclusive of a curfew and/or exclusion zones as determined by your Supervision Officer.

In addition, you shall be subject to the highest level of supervision.

In addition, you shall be subject to an annual polygraph examination.

In addition, you shall not have any contact or communication with the victim of your offense.



**U.S. DEPARTMENT OF JUSTICE**
**UNITED STATES PAROLE COMMISSION**



**WARRANT APPLICATION**
**D.C. Code Offender**

Name ...............................**Martin, Barry**

Reg. No .........................**08604-000**
DCDC No.......................**213-260**
FBI No...........................**381 42 DA6**
Birth Date.....................**10-14-60**
Race..............................**Black**

Date.........................................**July 10, 2007**
Termination of Supervision..... **11-6-2029**
[If Conviction Offense Before April 11, 1987 And
Offender Is On Mandatory Release, Termination
Date Is 180 Days Prior To Full Term]
Violation Date.........................**6-26-2006**
Released.................................**April 14, 2006**

Sentence Length ...........**36 years (Original); 8,848 days (Parole Violator Term)**
Original Offense.............**Rape (2 Counts); Burglary; Robbery**

If you have been arrested on a violator warrant in the District of Columbia and you have not been convicted of a new offense, you shall be given a probable cause hearing within five days of your arrest and violator warrant. Probable cause hearings are normally scheduled on Tuesdays and Fridays at the Central Detention Facility. The purpose of the probable cause hearing is to determine if there is probable cause to believe that you have violated the conditions of your release, and if so, whether to release you or hold you for a revocation hearing. If no probable cause is found, you will be released and either reinstated to supervision, or discharged from further supervision if your sentence has expired.

At your probable cause hearing and any subsequent revocation hearing you will be apprised of the information supporting the violation charges. You may present documentary evidence and voluntary witnesses on your behalf. If you deny the charge(s) against you, you may request the presence of those persons who have given information upon which the charges are based. Such adverse witnesses will be made available for questioning unless good cause is found for their non-appearance.

You may be represented by an attorney or, if you are unable to pay for such representation, an attorney will be appointed for you if you fill out and promptly return a request for representation to the hearing examiner.

If, after a revocation hearing, you are found to have violated the conditions of your release the Commission may: (1) restore you to supervision, and, if appropriate, (a) reprimand you; (b) modify your conditions of supervision; or (c) refer you to a residential community treatment center for the remainder of your sentence; or (2) revoke your parole, mandatory release, or supervised release in which case the Commission will also decide when to consider you for further release.

If the Commission revokes your parole, mandatory release, or supervised release you will not receive credit toward service of your sentence for time spent on parole/mandatory release/supervised release.

**CHARGES:**
**Charge No. 1 - Use of Dangerous and Habit Forming Drugs.** The releasee submitted urine specimens which tested positive for:
Cocaine – 6-26-2006, 6-29-2006, 7-10-2006, and 7-13-2006; and
Opiates – 3-23-2007.
This charge is based on the information contained in the violation report dated 7-6-2007 from supervising officer Jamie Brand and corresponding drug report dated 7-6-2007.
**I ADMIT [   ] or DENY [   ] this charge.**

---

**Martin, Barry**
**Reg. No. 08604-000    DCDC No. 213-260**

EXHIBIT 3

**Charge No. 2 - Failure to Submit to Drug Testing.** The releasee failed to submit urine specimens on 7-3-2006, 7-6-2006, 7-17-2006, 7-20-2006, 11-16-2006, 12-7-2006, 2-22-2007, 3-1-2007, and 3-5-2007. This charge is based on the information contained in the violation report dated 7-6-2007 from supervising officer Jamie Brand.
**I ADMIT [  ] or DENY [   ] this charge.**

**Charge No. 3 - Violation of Special Condition (Drug Aftercare).** The releasee was terminated from the Washington Hospital Center outpatient drug treatment program on 7-7-2006 for drug use. Additionally, on 4-15-2007, the releasee was ordered to leave the Oxford House transitional housing program for violating house rules. This charge is based on the information contained in the violation report dated 7-6-2007 from supervising officer Jamie Brand and the discharge summary dated 7-7-2006.
**I ADMIT [  ] or DENY [   ] this charge.**

**Charge No. 4 - Violation of Special Condition (GPS).** On 5-15-2007, 5-24-2007, and 6-24-2007, the releasee refused to have the GPS device installed. This charge is based on the information contained in the violation report dated 7-6-2007 from supervising officer Jamie Brand.
**I ADMIT [  ] or DENY [   ] this charge.**

**Charge No. 5 - Law Violation. Communicating Threats to Kill.** On 7-6-2007, the releasee made several threats to kill Supervisory Community Supervision Officer Akil Walker. This charge is based on the information contained in the violation report dated 7-6-2007 from supervising officer Jamie Brand.
**I ADMIT [  ] or DENY [   ] this charge.**

**Probable Cause Hearing Is Required**

Warrant Recommended By:

Warrant Issued.................. **July 10, 2007**

**Scott Kubic, Case Analyst**
**U.S. Parole Commission**

Community Supervision Office Requesting Warrant: **Sex Offenders Supervision-Team 52, 300 Indiana Avenue**

**Martin, Barry**
**Reg. No. 08604-000    DCDC No. 213-260**

**HEARING SUMMARY**

**Name:  Martin, Barry**                                    Reg No:  08604-000

**Hearing Parameters**

    Hearing Format ..............................: **In Person**

    Hearing Type ................................: **Revocation (Local)**

    Hearing Date ................................: September 12, 2007

    Examiner.......................................: Gregory E. Price

    Institution ....................................: D.C. Correctional Treatment Facility

    Second Designation .....................: Unknown

**Sentence Parameters**

    Sentence Type...............................: **DC Parole Eligible**

    MR/Statutory Release Date..........: 5/6/2023

    Full Term Date.............................: 1/31/2031

    Months in Custody.......................: 3 as of 10/9/2007

    Detainer.......................................: None

**Warrant Parameters**

    Supervision ...................................: **Parole**

    Revoking District & Office..........: CSOSA, Sex Offender Unit, 300 Indiana Avenue, NW,
DC

    Warrant Execution Date...............: 7/10/2007

    Probable Cause Date....................: 7/20/2007

**Additional text regarding the above parameters:** None

---

**Prior Action:** Please see DC Local Revocation Prehearing Assessment dated August 29, 2007.

**Counsel:** Vincent Haskell, PDS
633 Indiana Avenue, NW
Washington, DC

**Witnesses:** Jamie Brand, CSO.

Akil Walker, Supervisory CSO.
Katherine Terry-Crosson was not subpoenaed by the Commission.

**Martin, Barry, Reg. No. 08604-000**                    **Page 1 of 8**          EXHIBIT 4

**Procedural Considerations:** None.

**Charges:**

**Charge No. 1 - Use of Dangerous and Habit Forming Drugs.**
    **Evidence Presented:** The subject admitted violation occurred in 2006 but denied the positives noted on 3/27/2007. Attorney Haskell pointed out that the subject was sanctioned on these positives drug test results that occurred in 2006. The subject entered into the Blair House Residential Substance Abuse Treatment Program and successfully completed that program through the balance of 2006. Attorney Haskell pointed out that it is the Commission's policy that if an offender is charged with violations and these violations are addressed, then the subject would not be held accountable for further sanctioning for those particular violations.

Pertaining to the positive noted on 3/23/2007, Attorney Haskell provided documentation that indicated the subject was admitted to Greater Southeast Hospital on 2/28/2007 through 3/7/2007. At that juncture, the subject was transferred to Family Hospital and he remained there from 3/7/2007 to 3/22/2007. The subject was treated for pneumonia at both hospitals. Attorney Haskell pointed out that the subject was provided medication Levaquin. This was the case at both hospitals. The subject was given this medication and Attorney Haskell had researched the medication which is developed by Merck. The research he found indicated that the Levaquin suggest that the drug may produce false positives for opiates. Attorney Haskell noted that the subject did not test positive for opiates prior to the hospitalization and has not tested positive since his release from the hospitals. He also noted that the subject's choice of drugs over the years has always been cocaine and never opiates. The subject has not had a history of opiate use. Attorney Haskell noted that he believes that on 3/27/2007 positive test results stem from these false positives associated with these medications administered to the subject while he had been hospitalized. Mr. Martin stated that his previous probation officer had informed him that his testing positive on 3/23/2007 should be no problem given the medications noted for testing positive for opiates.

Ms. Brand stated that on 4/12/2007 the subject admitted to a relapse on drugs on 7/6/2007. This was noted in a communication between a treatment specialist at the Blair House Facility. Ms. Brand noted that the subject's acknowledgement of testing positive is noted in Charge No. 5.

It appears that the subject tested positive in 2006 and on his own volition, pursued treatment at the Blair House. All records indicate that subject was in the Blair House Residential Treatment program. In fact, Attorney Haskell's office provided documentation that the subject tested positive while in participation at the Blair House Residential Treatment Program and tested positive during his stay. As a consequence, it appears these violations behaviors have been appropriately addressed.
    **Findings of Fact:** This examiner makes no finding concerning the above charge.
    **Basis:** The problem noted in this charge has already been addressed through the subject's successful completion of the Blair House Residential Substance Abuse Treatment Program.

**Charge No. 2 - Failure to Submit to Drug Testing.**
    **Evidence Presented:** The subject admitted that the subject failed to get tested during 2006. However, his attorney pointed out that just as his problem with the drug test were addressed by his

participation in the Blair House Residential Substance Abuse Treatment Program, his failure to get tested likewise has been handled through his successful completion of that program. The subject noted that on several of these dates, although he failed to get tested on those dates because they did not allow him to leave the facility, the subject reported the following day, (2/8/07 and 2/22/07) the subject tested negative. On 11/17/2006, one of the dates that he indicated he failed to appear for a drug test. CSO Brand reportedly that because Blair House with their amount of contract with CSOSA, would not routinely forward the drug test results participants in the Blair House Program.

**Findings of Fact:** This examiner makes no finding concerning the above charge.

**Basis:** The subject has addressed his failure to get tested through his successful completion of the Blair House Treatment Program.

### Charge No. 3 - Violation of Special Condition (DAPS).

**Evidence Presented:** The subject admitted to having been terminated from the Washington Hospital Center for denying having been thrown out from the Oxford House Facility. The subject noted that he had approached Oxford House on his own. He stated that he began having some problems there and that he left the program because the Oxford House Staff felt that his presence in the program would be problematic. It appears that some of the residents at the Oxford House started questioning the subject about his original crime because a probation officer appeared in tow with the Metropolitan Police Officers. The subject stated that one of the residents questioned him about his charges and he acknowledged that he had committed rape. Since that time, there apparently had been a negative bug about the subject being present and according to the subject; the staff at Oxford House had recommended that he leave the program as a means of reducing problems in the house. The subject stated that at that point he went to the Gospel Rescue Mission. However, at the Gospel Rescue Mission, those who want to reside there have to report to the Mission by 3 o'clock pm. Because of his employment in construction, the subject cannot always get there by that time frame. Subsequently, the subject entered into Adams Shelter. He noted that his probation officer had requested documentation that he was living at Adams House. He stated that he was unable to provide that to her because he would have to get up and leave Adams House 3 or 4 o'clock in the morning, at that time, staff was asleep. Consequently he was not able to gain the documentation that his probation officer had requested. The question about his being discharged from the Oxford House (wherein it was stated that he failed to follow rules) the subject stated that they listed him as a failure because he failed to attend two or three in house meetings. The subject stated that he missed those meetings because he was late leaving work.

CSO Brand indicated that he was terminated because of his continued drug usage. At that juncture, he did return to the Blair House Program. He noted that the subject entered into Oxford House on his own. He was asked to complete 20 Narcotics Anonymous Meetings within a month in order for him to remain in the Transitional Housing. He noted that he completed only 19 NA Meetings in roughly a month and a half. CSO Brand was questioned by this examiner what the Discharge Summary from Oxford House indicated. She noted that she has requested the Discharge Summary but has never received one from Oxford House. She also noted that the subject had failed to complete the required NA Meetings in March. The subject and the attorney spoke up that it was in March when the subject had to be hospitalized at Greater Southeast Washington Hospital and the Family Hospital. Attorney Haskell pointed out that given that CSO Brand has not secured the Discharge Summary there is no reason to determine the real reason why the subject was removed from the Oxford House. He noted that his client's report of what happened should carry just as much weight

of the authorization report as to what happened. Unfortunately, no one has a report from Oxford House detailing why the subject was terminated.

while
~~Why~~ it is unclear as to why the subject was terminated from the Oxford House, it is clear that the subject was terminated from the Washington Hospital Center's Program because of his drug usage. His removal from that program preceded the subject's entry into the Blair House Residential Substance Abuse Program.

**Findings of Fact:** This examiner makes no finding concerning the above charge.

**Basis:** The problems noted in Charge No. 3 have been addressed by the subject's successful completion of the Blair House Residential Substance Abuse Program.

**Charge No. 4 – Violation of Special Condition (GPS).**

**Evidence Presented:** The subject admitted the above charge. The subject expressed concerns about using the GPS. He believes that the system does not work because he had time required to work underground. As noted above, the subject was working on construction. He also believed that the GPS System was requested because the SCSO had reported that the subject had displayed deception when it comes to discussing his involvement with minors. The subject believed that SCSO Walker has wrongfully provided information to the Commission that has resulted in the subject being given a Special Condition of No Contact with Minors. There were a number of times during today's hearing; the subject had to be excused so that he could compose himself. The subject noted that he never had the GPS bracelet installed.

CSO Brand stated that the GPS was made referral due to the instability of the subject's residence. Given the subject's history of rape the instability of where he housed created concerns for CSO Brand and CSOSA. Consequently, they had requested the Special Condition for GPS Monitoring. She noted that the GPS Monitoring was the Special Condition imposed by the US Parole Commission. The subject continued trying to explain why he did not want to be placed on GPS Monitoring. The subject stated that the GPS was causing a number of problems for him including his belief that it would set him up for entrapment. The subject's belief that his perception that his SCSO was out to get him. His belief that his SCSO wrongly determined that he imposed a risk to minors even though his charge of rape clearly had been adult female victim. CSO Brand revealed that she could not verify where the subject was staying. She stated that clearly the documentation was that the subject was not staying at the Adam Shelter every night. The subject again believed that the SCSO Walker had submitted a letter requesting that the Special Condition of No Contact with Minors be added to the subject's list of conditions. The subject stated that this had created a major hardship on himself because he had approximately 8 to 9 siblings and each of them together had about 38 children. The subject expressed the observation that he is clearly frustrated because the Minor Condition because it not only impacted where he lived but also it impacted how he handled his clothing because he can take only so much clothing into the shelters.

This examiner took the time to review the subject's file at the Commission. It was discovered that a CSO by the name of Marsha Freeman had forwarded a Memorandum to the Program Director at the CTF pertaining to the subject. In that Memorandum, she indicated that there was evidence that the subject may have had some contact with minors based on information that was provided to SCSO Walker by a Dr. Truitt, a person who was involved in the subject's Sex Offender Aftercare Condition. Based on the information from Dr. Truitt, it was recommended that the subject not be allowed to reside with a relative. Also at the time, it was recommended that the subject not be

allowed to reside with a relative. Also, at that time it was recommended in the Memorandum that the subject might require a Special Condition of No Contact with Minors. The Case Analyst received a copy of this Memorandum and proceeded to alert the Commissioner. Based on her response to the Memorandum by Ms. Freeman, the Commission added the Special Condition of No Contact with Minors.

Be as it may, the bottom line issue here is that the subject was directed to participate in the GPS Monitoring Program and the subject refused. This type of behavior cannot be condoned.
**Findings of Fact:**   This examiner finds that the subject violated the conditions of release as indicated in the above charge.
**Basis:**  Your admission to the examiner.

### Charge No. 5 - Law Violation - Communicating Threats to Kill.
   **Evidence Presented:** The subject denied the above charge.

Akil Walker SCSO was sworn in. Mr. Walker stated that a staff meeting was held involving himself, the subject, the Branch Chief, Terri-Crosson, and his probation officer. Initially, a Mr. Moore who was also present (Virgil Moore). At that staff meeting, the subject admitted to using a substance the night before "getting high". During the conference the subject made a threat. The subject stated "I want to kill him". He also stated that he was tired of SCSO Walker "fucking with my life".  He stated that he had had it and was fed up with this Condition of No Minors. He also charged SCSO Walker with knowing that he was wrong in requesting the No Minor Condition. SCSO Walker indicated that they tried to calm the subject down. He stated that it was obvious he was under the influence. He stated that the subject was extremely angry. He also noted that when the subject made that threatening comment, that he was speaking to the Branch Chief, Mr. Terri-Crosson. He stated that the subject did not make any gestures toward him but he would look at him. SCSO Walker thought that the subject was teetering on the edge. Walker indicated that the subject had told that he knew when the subject gets off work. This examiner asked if SCSO if he thought he felt endangered by the subject's comments. His initial response was not really but then said yes.

Attorney Haskell cross examined the SCSO. Under questioning by Attorney Haskell, SCSO Walker acknowledged that the staffing took place at the Municipal Center on Indiana Avenue, NW. He noted there were a great number of Metropolitan Police Officers around and also there were a host of Community Supervision Officers around also. Attorney Haskell questioned whether or not the subject had any people around that were supportive of him. SCSO noted that the staff members were supportive of Mr. Martin. Mr. Walker stated that the subject never made any movement toward him. Mr. Walker indicated that he understands frustration and that he has supervised the subject for a long period of time. Mr. Walker finally indicated that he was eventually asked to leave the conference room. Mr. Martin charged Mr. Walker with having submitted the letter to the Commission indicating that the subject will require a Special Condition of No Contact with Minors. Once again the subject was reminded that Mr. Walker did not have anything to do with the institution of the modification of his supervision Special Condition. It appears that SCSO Walker did not pursue the threats. That is, he did not contact the police. This examiner questioned him as to why he had not and he stated that he did not act on stress because he had perceived the high as he had admitted to having gotten high that night.

Selena Claybrooks, who resides at 2039 38th Street, NW, Apt. 104 in Washington, DC, testified. She noted that she is a volunteer with PASA. She noted that the subject had a very supportive family who really wants the subject to be able participate in their lives. She believes that the subject has done well on supervision. She expressed some concern about the lack of support extended to the subject by staff at CSOSA.

Based on the testimony pertaining to this charge, it appears that SCSO Walker did not view the subject's comment as a genuine threat to the safety of his wellbeing. One would have as anticipated that he if preceded it as a legitimate threat, he would have contacted the police that were just down the hall. It is significant to note that SCSO Walker noted that the subject was speaking to the Branch Chief when he made his outburst and that he never looked at SCSO Walker and never made any moves toward him in any sort of an aggressive manner. As SCSO Walker noted during the testimony, it appears that the subject may have been venting his frustration secondary to his perception that SCSO Walker was the party that led to his have a No Contact with Minors Condition. This examiner views the interaction as shared by SCSO Walker also as the subject though the culprit, venting his frustration.
**Findings of Fact:** This examiner makes no finding concerning the above charge.
**Basis:** There's evidence that SCSO Walker did not view himself being in danger made by the comments made by this offender.

**Discipline:** None.

**Release Plans:** The subject indicated that he will probably have to return to the Adams Shelter, given the No Contact with Minors provision noted in the supervision. He stated were he not required to observe this condition; he would reside with several of his relatives.

### Guideline Parameters

**Severity Justification:**   Category One because it involved Administrative Violations.
**Salient Factor Score:**   6

**Re-parole Guideline Range:**.................. 0-8

**Evaluation:** This is a subject who has been holding a great deal of anger and hostility directed to CSOSA in general and to SCSO Akil Walker in particular. The subject and Mr. Walker have a long history and the subject believed that it was SCSO Walker who initiated conversation with the Commission that resulted in his having an additional Condition of No Contact with Minors. The subject stated that his frustration had to do with the observation that his crime of rape occurred with adult women. Testimony at today's hearing has pointed out was that the reason why the subject had the Special Condition added it was during observation of a polygraph exam, the subject tested as deceptive pertaining to questions regarding his contact with minors. When the subject was questioned about this following the polygraph, the subject refused to discuss the issue with the polygraph examiner. It is clear to this examiner that the subject can become hot headed at times. That is, he will act before he thinks and then this has to do with some problems for him. It should be noted to his credit the subject has not engaged in any new criminal behavior and that the subject's sole conviction is the rape that occurred in 1984. In short, the subject has not incurred any new criminal conviction in 23 years.

**Martin, Barry, Reg. No. 08604-000**              **Page 6 of 8**

The most troubling aspect of this case is that the subject adamantly refused to have the GPS System installed. While this examiner believes that the subject thought that he had some legitimate reasons for refusing the placement of the GPS bracelet, the subject was informed by this examiner that under no circumstances will the Commission condone any parolee refusing to comply with directive issues by a probation officer. This examiner took the time to explain the parolee that if he thought that his work would have created problems with the bracelet where he work, it could have been resolved and have been considered by his having the bracelet installed and his going to the worksite with his probation officer so she could see whether or not if there would be any problems. In fact, CSO Brand pointed out that if the jobsite did create problems then this simply would be documented and the subject would not be held accountable for the readings generated by the GPS Monitoring System. The subject was also reminded that the results of the polygraph exam perhaps could have been addressed ~~perhaps~~ if he had taken the time to discuss with the polygraph examiner the results of his test. He was also informed that it may have been this polygraph result that eventually led the Commission to add a Special Condition of No Contact with Minors. This examiner understands that the subject believes that his not been able to have contact with minors hinders his lifestyle and forces him to live in less than an acceptable way. CSO Brand pointed out that without that No Contact with Minors Condition that it's left up to the probation officer and his or her supervisor to whether or not family members might be exempted from this.

Another issue raised by the subject is to whether or not he is continued to be in need of Sex Offender Aftercare Condition. Information in the file indicated that the subject participated in Sex Offender Aftercare Condition for 6 year under Dr. Truitt. The subject indicated that when he was last released to the community, he approached Dr. Truitt and he was informed by Dr. Truitt that CSOSA would longer allow him to work with the subject. The exclamation for this was not provided to the subject or the subject clearly has not stated it at today's hearing.

**Recommendation:**   Revoke parole.   None of the time spent on parole shall be credited.     Parole Effective 1/9/2008, after the service of 8 months.

**Conditions:**  Sex Offender Aftercare (Assessment); As noted, the subject has been in Sex Offender Aftercare for 6 years. An Assessment as to his need is appropriate. Drug and Alcohol Aftercare.

**Statutory Interim Hearing:**  N/A.

**Guideline Use:**  A departure from the guidelines at this consideration is not warranted.

**Additional Text:**  A determination is needed to be made as to whether or not a Special Condition, No Contact with Minors is appropriate. This offender's original offense involved an adult female. This is the subject's only conviction and there is no evidence that he had plagued inappropriate with minors in the past. Unfortunately, the polygraph examiner was not able to give any reasons why the subject may have tested as deceptive relative to contact with minors. This examiner believes that it would be instructive to contact the Sex Offender Aftercare Treatment Providers as well as the polygraph examiner to get their interpretation of these results.

[Signature]

GEP/PAH

October 3, 2007

**Executive Reviewer's Comments:**

U.S. Department of Justice                                    **Notice of Action**
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

| | | |
|---|---|---|
| Name: MARTIN, Barry | Institution: | D.C. CTF |
| Register Number: 08604-000 | | |
| DCDC No: 213-260 | Date: | October 18, 2007 |

As a result of the hearing conducted on September 12, 2007, the following action was ordered:

### DC Local Revocation

Revoke parole. None of the time spent on parole shall be credited. Re-parole effective January 9, 2008 after the service of 6 months.

NOTE: Pursuant to 28 C.F.R. §2.82, your parole effective date is contingent upon approval of your release plan by the Commission. Your release plan will be investigated by the D.C. Court Services and Offender Supervision Agency (CSOSA), which will submit a report to the Commission before a parole certificate can be delivered.

In addition, you shall be subject to the Special Drug and Alcohol Aftercare Conditions that requires that you participate as instructed by your Supervision Officer in a program (inpatient or outpatient) approved by the D.C. Court Services and Offender Supervision Agency for the treatment of narcotic addiction or drug and alcohol dependency. That program may include testing and examination to determine if you have reverted to the use of drugs or alcohol. You shall also abstain from the use of alcohol and all other intoxicants during and after the course of treatment.

In addition, you shall be subject to the Global Positioning Systems monitoring inclusive of a curfew and/or exclusion zones as determined by your Supervision Officer.

In addition, you shall be subject to the Special Sex Offender Aftercare Condition. You shall participate in an in-patient or out-patient mental health program as directed by your Supervision Officer, with special emphasis on long-term sex offender testing and treatment. You are expected to acknowledge your need for treatment and to participate in good faith in achieving the program goals that will be established for you.

In addition, you shall be subject to the highest level of supervision.

In addition, you shall be subject to an annual polygraph examination.

In addition, you shall not have any contact or communication with the victim of your offense.

### FINDINGS OF FACT:

The Commission finds as a fact that you violated conditions of release as charged as indicated below:

Charge No. 4 - Violation of Special Condition (GPS).

---

MARTIN 08604-000                            -1-                        Clerk:   MDR/lvt
Queued: 10-18-2007 12:38:35 BOP-D.C. Correctional Treatment Facility | BOP-D.C. Federal Billing Unit | USM-District of
Columbia - District Court, D.C. District Court | FPD-District of Columbia, District of Columbia - DC |

 **EXHIBIT** 5

Basis:  Your admission to the examiner.
The Commission makes no findings concerning the following charges:

Charge No. 1 - Use of Dangerous and Habit Forming Drugs.

Charge No. 2 - Failure to Submit to Drug Testing.

Charge No. 3 - Violation of Special Condition (Drug Aftercare).

Charge No. 5 - Law Violation:  Communicating Threats to Kill.

Basis:  Insufficient evidence.

**REASONS**:

Your parole violation behavior has been rated as administrative violation(s) of Category One severity. Your salient factor score is 6.  See the attached sheet for an explanation of your individual Salient Factor Score items.  The table at the bottom presents the points for Salient Factor Score Item C.  As of 10/9/2007, you have been in confinement as a result of your violation behavior for a total of 3 month(s).  Guidelines established by the Commission indicate a customary range of 0-8 months to be served before release. After review of all relevant factors and information, a departure from the guidelines at this consideration is not warranted.

THE ABOVE DECISION IS APPEALABLE.

You may obtain appeal forms from your caseworker or supervising officer and they must be filed with the Commission within thirty days of the date this Notice was sent.

Copies of this Notice are sent to your institution and to your supervising officer.  In certain cases, copies may also be sent to the sentencing court.  You are responsible for advising any others you wish to notify.

cc:    D.C. Federal Billing Unit
       D.C. Department of Corrections
       Washington, D.C.  20003

       U.S. Marshals Service
       District of Columbia - District Court
       333 Constitution Ave, N.W., Room 1400
       Washington, D.C.  20001
       Warrants - Attn:  David Baldwin

       Vincent Haskell
       Public Defender Service
       District of Columbia
       Special Proceedings Division
       633 Indiana Avenue, N.W.
       Washington, D.C.  20004

       CSS Data Management Group
       D.C. Court Services & Offender Supervision Agency

300 Indiana Avenue, N.W., Suite 2070
Washington, D.C. 20001

## SALIENT FACTOR SCORE (SFS-98)

| Your Pts | Salient Factor Score (SFS-98) Item Explanations |
|---|---|
| 2 | A - Prior convictions/adjudications (adult or juvenile) None = 3; One = 2; Two or three = 1; Four or more = 0 |
| 0 | B - Prior commitments of more than thirty days (adult or juvenile) None = 2; One or two = 1; Three or more = 0 |
| 3 | C - Age at commencement of the current offense/prior commitments of more than thirty days (adult or juvenile) (see table below for an explanation) |
| 0 | D - Recent commitment free period (three years) No prior commitment of more than thirty days (adult or juvenile), or released to the community from last such commitment at least three years prior to the commencement of the current offense = 1; Otherwise = 0 |
| 0 | E - Probation/parole/confinement/escape status violator this time Neither on probation, parole, confinement, or escape status at the time of the current offense; nor committed as a probation, parole, confinement or escape status violator this time = 1; Otherwise = 0 |
| 1 | F - Older offenders If the offender was 41 years or more at the commencement of the current offense (and the total score from Items A-E above is 9 or less) = 1; Otherwise = 0 |
| 6 | Salient Factor Score (SFS-98) (sum of points for A-E above) |



| Points For SFS Item C | | | |
|---|---|---|---|
| Age | Prior Commitments | | |
| | 0-1 | 4 | 5 |
| 26 & Up | 3 | 2 | 1 |
| 22-25 | 2 | 1 | 0 |
| 20-21 | 1 | 0 | 0 |
| 0-19 | 0 | 0 | 0 |



U.S. Department of Justice
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

**Notice of Action**

| | | |
|---|---|---|
| Name:  Martin, Barry | Institution: | Cumberland FCI |
| Register Number:  08604-000 | | |
| DCDC No: 213-260 | Date: | January 9, 2008 |

In the case of the above-named, the Commission orders pursuant to 28 C.F.R. §2.85:

Reopen and add the Reentry and Sanction Center placement condition. No change in parole effective date of 1/9/08.

**With the special condition(s) as indicated below:**

In addition, you shall reside in and participate in a program of the Re-Entry and Sanctions Center until discharged by the Center Director.

In addition, you shall be subject to the Special Drug and Alcohol Aftercare Conditions that requires that you participate as instructed by your Supervision Officer in a program (inpatient or outpatient) approved by the D.C. Court Services and Offender Supervision Agency for the treatment of narcotic addiction or drug and alcohol dependency. That program may include testing and examination to determine if you have reverted to the use of drugs or alcohol. You shall also abstain from the use of alcohol and all other intoxicants during and after the course of treatment.

In addition, you shall be subject to the Global Positioning Systems monitoring inclusive of a curfew and/or exclusion zones as determined by your Supervision Officer.

In addition, you shall be subject to the Special Sex Offender Aftercare Condition. You shall participate in an in-patient or out-patient mental health program as directed by your Supervision Officer, with special emphasis on long-term sex offender testing and treatment. You are expected to acknowledge your need for treatment and to participate in good faith in achieving the program goals that will be established for you.

In addition, you shall be subject to the highest level of supervision.

In addition, you shall be subject to an annual polygraph examination.

In addition, you shall not have any contact or communication with the victim of your offense.

---

Martin 08604-000
Queued: 01-09-2008 15:23:53 BOP-Cumberland FCI |

-1-

Clerk: OMG



**REASONS**:

The Commission has determined, based upon a request from the Supervising Officer that the Reentry and Sanction Center placement be added as a special condition because the condition would allow the subject to be assessed and address a history of substance abuse.

THE ABOVE DECISION IS NOT APPEALABLE.

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc:

CSOSA
300 Indiana Avenue, N.W., Suite 2070
Washington, D.C. 20001



**U.S. Department of Justice**
**United States Parole Commission**

**CERTIFICATE OF PAROLE**
**District of Columbia Offender**

Having determined that (1) Martin, Barry, Register No. 08604-000, (DCDC No. 213-260) (the "inmate")
is eligible for parole; (2) there is a reasonable probability that the inmate will live and remain at liberty
without violating the law; and (3) the inmate's release is not incompatible with the welfare of society, the
United States Parole Commission (the "Commission") ORDERS that the inmate be paroled on **January
9, 2008** and remain under parole supervision through **February 1, 2031**. The conditions listed in this
certificate apply during the inmate's parole supervision.

Given under the hand and the seal of the Commission on January 9, 2008.

**UNITED STATES PAROLE COMMISSION**

*Jequan S. Jackson*

**By: Jequan S. Jackson, Case Analyst**

Docket/Case Number: F-4577-84CEFH

**Acknowledgement of Release Conditions**

I have read, or had read to me, the conditions that are listed on this CERTIFICATE OF PAROLE. I have
received a copy of this CERTIFICATE OF PAROLE. I fully understand the conditions that have been
imposed upon me and know that if I violate any of those conditions I may be sent back to prison.

**Consent to the Disclosure of Drug/Alcohol Treatment Information**

By signing this CERTIFICATE OF PAROLE, I consent to unrestricted communication between any
facility administering a drug or alcohol treatment program in which I am or will be participating, on the
one hand, and the Commission and the office responsible for supervising me, on the other hand. I consent
to disclosure by such facility to the Commission and the office responsible for supervising me of any
information requested related to my supervision, and the disclosure by the Commission and the office
supervising me to any agency that requires such information for the performance of an official duty. This
consent is irrevocable until the end of parole supervision.

_____     _____
Name                                          DCDC No.

Witnessed: _____
                 Name and Title                              Date

The above-named inmate was released on the _____ day of _____, 20____ with a total
of _____ days remaining to be served.

_____
Official Certifying Release

Queued: 01-09-2008 16:48:14 BOP-Cumberland FCI |

**EXHIBIT** 7

This CERTIFICATE OF PAROLE becomes effective on the day of release set forth above, after you sign this certificate. If you fail to comply with any of the conditions, you may be summoned to a hearing, or retaken on a warrant and reimprisoned pending a hearing, to determine if your parole should be revoked.

## GENERAL CONDITIONS

1.  A.  You must go directly to Washington, D.C. and appear in person at the Intake Office of the Court Services and Offender Supervision Agency for the District of Columbia (CSOSA), 300 Indiana Avenue, N.W., Washington, D.C. 20001. If you are unable to appear in person at that office within three days of release, you must appear in person at the United States Probation Office nearest to you and follow the instructions of the duty officer.

    B.  If you are not released to the community after your parole, you must follow the instructions in 1.A. above when you are released to the community.

2.  You must not leave the Washington, D.C. metropolitan area without the written permission of the officer supervising you. The Washington, D.C. metropolitan area consists of the District of Columbia, Prince Georges and Montgomery Counties in Maryland, Arlington and Fairfax Counties in Virginia, and the Cities of Alexandria, Fairfax, and Falls Church in Virginia. For the purpose of applying all conditions of release, "the officer supervising you" includes any supervision officer assisting, substituting for, or acting on behalf of the officer assigned to your supervision.

3.  You must, between the first and third day of each month, make a written report to the officer supervising you. In addition, you must meet with the officer supervising you at such times and in such a manner as that officer directs, and provide such information as that officer requests. All information that you provide to the officer supervising you must be complete and truthful.

4.  You must notify the officer supervising you within two days of (A) an arrest or questioning by a law-enforcement officer, (B) a change in your residence, or (C) a change in your employment.

5.  You must permit the officer supervising you to visit your place of residence and your place of business or employment.

6.  You must permit the officer supervising you to confiscate any material that officer believes may be contraband and that is in plain view in your possession, including in your residence, place of business or employment, and vehicle.

7.  You must submit to a drug or alcohol test whenever ordered to do so by the officer supervising you.

8.  You must not violate any law and must not associate with someone else who is violating any law.

9.  You must not possess a dangerous weapon, which includes ammunition.

10.  You must not drink alcohol to excess and must not illegally use or possess a controlled substance. You must not frequent a place where you know a controlled substance is illegally used or distributed.

11.  You must not associate with a person who has a criminal record without permission from the officer supervising you.

12.  You must not enter into an agreement to act as an informant or undercover agent for a law-enforcement agency without permission from the Commission.

13.  You must make a diligent effort to work regularly, unless excused by the officer supervising you, and to support any legal dependent.

14.  You must make a diligent effort to satisfy any fine, restitution order, court costs or assessment, or child-support or alimony payment to which you are subject. You must provide financial information relevant to the payment of such a financial obligation that is requested by the officer supervising you. If you are unable to pay such a financial obligation in one sum, you must cooperate with the officer supervising you to establish an installment-payment schedule.

15.  If you are being paroled from a sentence imposed following conviction of a domestic-violence crime, and that conviction is your first conviction for such a crime, you must, as directed by the officer supervising you, attend an approved offender-rehabilitation program if such a program is readily available within a 50-mile radius of your residence.

16.  If you are required by law to report and register as a sex-offender, you must comply with that law.

17.  You must provide a DNA sample if the officer supervising you determines that collection of such sample is required by law.

18.  You must participate in an Employment Readiness Program if so directed by the officer supervising you.

19.  If you are being supervised by CSOSA, you must submit to the sanctions imposed by the officer supervising you within the limits established by an approved schedule of graduated sanctions.

20.  If so directed by the officer supervising you, you must notify a person of your criminal history or characteristics to inform that person of a risk of harm.

Queued: 01-09-2008 16:48:14 BOP-Cumberland FCI |

**SPECIAL CONDITIONS**

In addition, you shall reside in and participate in a program of the Re-Entry and Sanctions Center until discharged by the Center Director.

In addition, you shall be subject to the Special Drug and Alcohol Aftercare Conditions that requires that you participate as instructed by your Supervision Officer in a program (inpatient or outpatient) approved by the D.C. Court Services and Offender Supervision Agency for the treatment of narcotic addiction or drug and alcohol dependency. That program may include testing and examination to determine if you have reverted to the use of drugs or alcohol. You shall also abstain from the use of alcohol and all other intoxicants during and after the course of treatment.

In addition, you shall be subject to the Global Positioning Systems monitoring inclusive of a curfew and/or exclusion zones as determined by your Supervision Officer.

In addition, you shall be subject to the Special Sex Offender Aftercare Condition. You shall participate in an in-patient or out-patient mental health program as directed by your Supervision Officer, with special emphasis on long-term sex offender testing and treatment. You are expected to acknowledge your need for treatment and to participate in good faith in achieving the program goals that will be established for you.

In addition, you shall be subject to the highest level of supervision.

In addition, you shall be subject to an annual polygraph examination.

In addition, you shall not have any contact or communication with the victim of your offense.

## D.C. Local Revocation Prehearing Assessment

**Name.........:**  **MARTIN, BARRY**
**Reg Number.:**  **08604-000**
**Birth Date...:**  **10/14/1960**
**DCDC Number:**  **213-260**

**Prehearing Parameters**
　　Date.................................: 08/29/2007
　　Examiner...........................: Otis Thomas
　　Location.............................: CTF (or DC Jail)

**Warrant Parameters**
　　Supervision Type...................: Parole
　　Supervision District...............: General Supervision Unit IX-Team 53 1418 Good Hope Road
　　Warrant/Summons..................: Warrant
　　Warrant Executed..................: 07/10/2007
　　Probable Cause Found.............: 07/20/2007
　　Revocation Hearing Deadline.....: 09/17/2007

**Sentence Parameters**
　　Adult / Youth...…..    Adult
　　Jail Credit (days)….................: 0
　　In-Operative Time (days)…....    0
　　MR Date (2/3)...  05/06/2023
　　Full Term Date...…..  01/31/2031
　　GL Credit (months)................: 0
　　GL Months in Custody...............: 2    as of 09/07/2007
　　GL Months at Projected MR.......: 190
　　Detainer...…..    None

**Additional Text regarding the above parameters:**

**Previous Commission Action:**
 The subject was sentenced to a 36 year aggregate term for Rape (2 Counts), Burglary, and Robbery (F 4577-84). The subject was paroled on 12/6/95 and his parole was revoked for the first time on 11/10/98 for non-criminal charges. The subject was paroled immediately, and he was released on 6/2/99. The DC Parole Board cancelled prior order to revoke and rehear. The subject's parole was revoked for the second time on 12/3/04, for Failure to Submit to Drug Testing, Use of Drugs, Violation of Special Conditions (Alcohol Aftercare), and Failure to Report to Supervising Officer as Directed. The subject was paroled on 3/25/05.

The Commission issued an Official Letter of Reprimand dated 4/18/05, for Use of Drugs.

MARTIN, BARRY 08604-000

EXHIBIT
Page 1 of 2
8



The U.S. Parole Commission issued an arrest warrant on 8/9/05, for Failure to Maintain Regular Employment, Use of Drugs, and Failure to Submit to Drug Testing. The subject accepted an Expedited Offer. The NOA dated 11/25/2005, ordered: Revoke parole. None of the time spent on parole shall be credited. Parole effective 12/15/2005, after the service of 4 months. The subject was paroled on 3/25/2006, due to release planning.

**Violations of Conditions of Release:**

**Charge No. 1 - Use of Dangerous and Habit Forming Drugs**
Violation Behavior: The releasee submitted urine specimens which tested positive for:
Cocaine – 6-26-2006, 6-29-2006, 7-10-2006, and 7-13-2006; and
Opiates – 3-23-2007.
This charge is based on the information contained in the violation report dated 7-6-2007 from supervising Officer Jamie Brand and corresponding drug report dated 7-6-2007.

**Charge No. 2 - Failure to Submit to Drug Testing**
Violation Behavior: The releasee failed to submit urine specimens on 7-3-2006, 7-6-2006, 7-17-2006, 7-20-2006, 11-16-2006, 12-7-2006, 2-22-2007, 3-1-2007, and 3-5-2007. This charge is based on the information contained in the violation report dated 7-6-2007 from supervising Officer Jamie Brand.

**Charge No. 3 - Violation of Special Condition (Drug Aftercare).**
Violation Behavior: The releasee was terminated from the Washington Hospital Center outpatient drug treatment program on 7-7-2006 for drug use. Additionally, on 4-15-2007, the releasee was ordered to leave the Oxford House transitional housing program for violating house rules. This charge is based on the information contained in the violation report dated 7-6-2007 from supervising officer Jamie Brand and the discharge summary dated 7-7-2006.

**Charge No. 4 - Violation of Special Condition (GPS).**
Violation Behavior: On 5-15-2007, 5-24-2007, and 6-24-2007, the releasee refused to have the GPS device installed. This charge is based on the information contained in the violation report dated 7-6-2007 from supervising Officer Jamie Brand.

**Charge No. 5 - Law Violation. Communicating Threats to Kill.**
Violation Behavior: On 7-6-2007, the releasee made several threats to kill Supervisory Community Supervision Officer Akil Walker. This charge is based on the information contained in the violation report dated 7-6-2007 from supervising Officer Jamie Brand.

**Severity:**  Category One

**Severity Justification:** Your violation behavior has been rated Category One severity because it involved the following Administrative and Criminal offenses: Use of Drugs, Failure to Submit to Drug Testing, Violation of Drug Aftercare, Violation of Special Condition (GPS), and Communicating Threats to Kill.

**SALIENT FACTOR SCORE  (SFS-98)**

SFS Item A = 2    Subject has 1 prior convictions/adjudication.

| Date | Offense | Disposition |
| --- | --- | --- |

| | | |
|---|---|---|
| 07/03/1984 | Rape (2 Counts), Burglary, and Robbery (F 4577-84) | 36 year aggregate term (1-1); Paroled on 12/6/95; Revoked on 11/10/98 (1-1); Paroled immediately on 6/2/99; Revoked on 12/3/04 (1-2); Paroled on 3/25/05.  Parole revoked on 11/25/05, paroled on 4/14/06 (1-3) |

---

SFS Item B =  0    Subject has 3 commitments of more than 30 days that were imposed prior to the last overt act of the current offense.

SFS Item C =  3    Subject was 45 years old at the commencement of the current offense and had 3 prior commitments.

SFS Item D =  0    06/26/2006 - Date of Current Offense.
04/14/2006 - Release to the Community from last commitment

SFS Item E =  0    Subject is a parole/ supervised release violator.

SFS Item F =  1    Sum of Items A-E = 5 and the offender was 45 years old at the commencement of the current offense.

**Salient Factor Score =  6**

---

**Rescission Behavior(s):**
The prisoner had no Disciplinary Behavior after the Warrant Execution.


**Re-parole Guidelines (range in months):  0 - 8**

**Rescission Guidelines (range in months):  0 - 0**

**Aggregate Guidelines (range in months):  0 - 8**

**Text to Describe Any Other Behavior or Remaining Issues:**
None

**Evaluation:**
The subject's parole violation is rated as Category One severity, because it involved Communicating a Threat to Kill.  The subject requested the Branch Chief of the Sex Offender Division as an adverse witness.  Based on this it does not appear that he would accept an expedited offer.


MARTIN, BARRY 08604-000                                                    Page 3 of 3

**Barry Martin**

PDID:337-813
CSOSA: C0126709

| PRIMARY | STREET | CITY | STATE | MOVED IN | MOVED OUT | | |
|---------|--------|------|-------|----------|-----------|---|---|
| Yes | 2210 Adams Place | Washington | DC | 2/12/2008 | | 🖉 | |
| No | 1900 Massachusetts Avenue | Washington | DC | 1/9/2008 | 2/12/2008 | 🖉 | Copy Address |
| No | 2118 13th Street | Washington | DC | 11/26/2007 | | 🖉 | |
| No | 2210 Adams Place | Washington | DC | 4/17/2007 | | 🖉 | |
| No | 810 5th Street | Washington | DC | 4/16/2007 | 4/17/2007 | 🖉 | Copy Address |
| No | 4609 Benning Road | Washington | DC | 2/20/2007 | 4/15/2007 | 🖉 | Copy Address |
| No | 635 I Street | Washington | DC | 7/20/2006 | 2/20/2007 | 🖉 | Copy Address |
| No | 1355 New York Avenue | Washington | DC | 7/10/2006 | 7/20/2006 | 🖉 | Copy Address |
| No | 1905 E Street | Washington | DC | 7/4/2006 | 7/10/2006 | 🖉 | Copy Address |
| No | 925 13th Street | Washington | DC | 5/24/2006 | 7/4/2006 | 🖉 | Copy Address |
| No | 1436 Irving Street | Washington | DC | 5/19/2006 | 5/24/2006 | 🖉 | Copy Address |
| No | 1320 Harvard Street | Washington | DC | 4/21/2006 | 5/19/2006 | 🖉 | Copy Address |
| No | 4628 5th Street | Washington | DC | 2/9/2006 | | 🖉 | |
| No | 708 Faraday Place | Washington | DC | 7/23/2004 | 3/17/2005 | 🖉 | Copy Address |
| No | 4660 Mlk Avenue | Washington | DC | 11/17/2003 | | 🖉 | |
| No | 1723 Q | Washington | DC | 5/8/2003 | 11/17/2003 | 🖉 | Copy Address |
| No | 4660 L.k Avenue | Washington | DC | 4/2/2003 | 5/7/2003 | 🖉 | Copy Address |
| No | 1320 Harvard Street | Washington | DC | | 7/23/2004 | 🖉 | Copy Address |
| No | 446 S Street | Washington | DC | | | 🖉 | |
| No | 708 Faraday Place | Washington | DC | | 4/1/2003 | 🖉 | Copy Address |
| No | 3649 6th Street | Washington | DC | | | 🖉 | |
| No | 446 S Street | Washington | DC | | | 🖉 | |
| No | 3487 Cranmer Mews | Dale City | VA | | | 🖉 | |
| No | 4820 13th Street | Washington | DC | | | 🖉 | |

EXHIBIT
9

**The Reentry and Sanctions Center:  An Opportunity for Enhanced Crime Control in Washington, DC**

The Court Services and Offender Supervision Agency (CSOSA) opened a Reentry and Sanctions Center (RSC) in February 2006, providing the city with an important and effective tool in crime control.  The center provides clinical substance abuse assessment and treatment readiness services for men and women on pretrial release, probation, parole, or supervised release.

The Reentry and Sanctions Center is housed in Karrick Hall, a former doctors' dormitory on the grounds of DC General Hospital.  The 102-bed center is designed to address the relationship between substance abuse and crime.  Defendants and offenders who have repeatedly abused drugs will reside in a controlled setting and complete a 30-day program to develop long-term treatment plans before moving on to a continuum of treatment interventions, which will often include inpatient, transitional, and outpatient services.

CSOSA is a federal agency founded in 1997 as part of the DC Revitalization Act's restructuring of several DC criminal justice functions.  The agency supervises approximately 15,500 individuals on probation, parole or supervised release.  The Pretrial Services Agency, an independent entity within CSOSA, supervises an additional 8,000 persons.

CSOSA's commitment to the residents of the District of Columbia is to improve public safety by employing cost effective, evidence-based practices to supervise criminal offenders.  By increasing the number of people who complete substance abuse assessment, preparation, and a continuum of treatment inventions, CSOSA can make more effective use of current substance abuse treatment funds.

The need for this type of facility in Washington, DC is significant.  Nearly two-thirds of offenders returned to prison by the United States Parole Commission in 2005 faced revocation proceedings for continued drug abuse, not a new arrest.  Sixty-five percent of probation revocations were drug-related.  Despite having an $11 million budget for substance abuse treatment during fiscal year 2005, CSOSA was able to provide only 25 percent of offenders with serious, chronic substance abuse histories with a clinically appropriate course of treatment, which often consists of residential, transitional, and outpatient interventions.

The Reentry and Sanctions Center greatly enhances CSOSA's ability to effectively supervise substance-abusing offenders.  The first focus of the center's programming is accurate clinical assessment, the goal of which is to develop an individualized treatment plan that maps out a long-term continuum of treatment.  Offenders and defendants agree to the treatment plan by signing a behavioral contract, which spells out increasingly severe consequences for failure to complete the program or adhere to the rules of supervision.

Drafted by Bryan Young, (202) 220-5308, bryan.young@csosa.gov

**EXHIBIT**

*10*

The program's second major focus is treatment readiness, which consists of interventions designed to prepare individuals for the treatment continuum that will follow release from the RSC. Included in this process are a series of cognitive behavioral interventions designed to enhance offenders' motivation to change. The old adage that you cannot treat addiction until an addict asks for help contains an element of truth. It is more accurate to say that with the proper preparation, you can make a person in need of treatment more willing to accept help when it is offered.

The cost-benefit ratio of treating serious offenders with long-term substance abuse histories is attractive. Researchers evaluating the cost effectiveness of treatment programs in California found that for every $1 spend on treatment society saves between $4 and $10 in reduced crime and public health costs. An oft-cited Rand Corporation study maintains that for every $1 spent on treatment society saves $7.

Recent analyses of treatment show that the best results come with the most serious offenders. Returns diminish with offenders who present lower risk and less severe patterns of dependence. In a 1999 study, researchers at Texas Christian University found that seventy-four percent of high-risk parolees who completed both in-prison and community-based treatment did not return to prison within three years. In comparison, forty-eight percent of high-risk parolees who did not receive in-prison treatment or aftercare in the community returned to prison within three years.

The return on the money invested in treatment is greater for high-risk than for low-risk parolees. The same Texas study found that it took $165 to reduce reincarceration rates by 1 percent for high-risk offenders. For low-risk offenders, it took approximately $500 to reduce the reinarceration rate by 1 percent.

In the District of Columbia, we have experienced positive results from using the former Assessment and Orientation Center, which is the program upon which the new Reentry and Sanctions Center is based. An independent review conducted by University of Maryland researchers in 2001 found that in the twelve months following participation in the center, compared to the twelve months before it, the arrest rate of participants fell by 35 percent.

The Reentry and Sanctions Center provides a cost effective, evidence-based model of substance abuse treatment preparation for the most serious offenders who are being supervised in the community. The goal is that a significant number of those offenders will present a reduced threat to public safety. The Reentry and Sanctions Center has the potential to be one of the most cost effective tools CSOSA has to contribute to crime control in this city.

# References

Blankenship, J. Dansereau, D.F., Simpson, D.D. (1999).  Cognitive enhancements of readiness for corrections-based treatment for drug abuse.  *The Prison Journal*, 79 (4), 431-445.

Butzin, C.A., Martin, S.S., Jamse, M.A., Inciardi, J.A. (2002).  Evaluating component effects of a prison-based treatment continuum.  *Journal of Substance Abuse Treatment,* 22 (2002), 63-69.

Evidence-based adult corrections programs:  What works and what does not (2006).  Washington State Institute for Public Policy.

Gerstein, D. R., Johnson, R. A., Harwood, H. J., Fountain, K., Suter, N., & Malloy, K. (1994).  *Evaluating recovery services:  The California drug and alcohol treatment assessment (CALDATA) general report.*  Sacramento:  California Department of Alcohol & Drug Programs.

Griffith, J. D., Hiller, M. L., Knight, K., & Simpson, D. D.  (1999)  A cost-effectiveness analysis of in-prison therapeutic community treatment and risk classification.  *The Prison Journal,* 79, no. 3, 352-368.

Taxman, F.  (2004).  The effect of the W/B HIDTA-funded substance abuse treatment continuum on arrest rates of criminals entering treatment in calendar year 2001.  College Park, MD:  Institute for Behavior and Health.